Benjamin Brenner, J.
This is an action to rescind a release executed on receipt of $750 in behalf of an unrepresented five-year-old infant who had sustained a basal skull fracture.
There is no evidence of fraud or mistake on the part of the defendant’s insurance carrier or of the infant’s aunt and guardian ad litem. Both doctors who examined the child for the insurance carrier within weeks following the auto accident were aware of the infant’s hospitalization for one week during which time she bled from an ear for three days, and the fact that she had also suffered a head injury two years earlier for which she had been hospitalized. They found her to have fully recovered and to have sustained no brain injury, which findings they reported to the court at the time the compromise papers were prepared and presented by the salaried record counsel for said insurance carrier. Despite her testimony to the contrary, the infant’s aunt and guardian was similarly aware of the facts, except, of course, she could not have suspected, as could the defendant’s insurance carrier and its examining doctors, the possibility of subsequent fainting spells and petit mal which required the child to be again twice hospitalized and transferred to special health classes.
It seems to me to be unnecessary in the instant case to make fine distinctions as to the legal sufficiency of the release based merely on the fact that the injuries turned out to be more serious than originally contemplated. Nor is it useful to speculate whether the subsequent brain injury was the natural consequence of the original injuries or an entirely different sequela thereof.
Assuming that the doctors examining in behalf of the insurance carrier truthfully reported their findings of complete recovery and no brain injury, they nonetheless relied on clinical examinations, though the hospitalization for a basal skull fracture and persistent bleeding from the ear was superimposed on an earlier head injury. Brain damage was certainly plausible, and this plausibility required something more than an inordinately hurried evaluation founded substantially upon clinical testing. It certainly should have alerted the insurance carrier to the need for fair dealing with the unemployed, penurious aunt who had custody of the orphaned baby. The release *323 proffered to' her by the insurance carrier, containing, as it did, a provision for nonliability for ‘ ‘ unknown ’ ’ injuries, was, in these circumstances, less than fair. Indeed, it was downright unconscionable and, in the light of the unseemly haste to examine the unrepresented infant and to dispose of her claim, it was clearly a case of gross overreaching.
I did, as was pointed out by defendant’s counsel, decide a similar case (Bellomo v. Lincoln Sav. Bank of Brooklyn, 23 Misc 2d 632) in favor of the defendant, but in that case there was a failure of proof of causal relation. Here no such factor is involved. However, I did say (p. 634) in that case, that “ Overreaching insurance carriers rushing to effectuate settlements of claims involving serious injuries to persons who are ignorant of the full significance of a release cannot expect it to be a bar to recovery for such unknown injuries ” (citing Barry v. Lewis, 259 App. Div. 496). This language I deem to be appropriate to the conduct of the insurance carrier in this ease.
Plaintiffs are entitled to the entry of judgment as demanded in their amended complaint.